# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| JACQUELINE A. MARZAN,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>ANDREW SAUL[1],<br>Acting Commissioner of Social Security,<br><br>　　　　　　　Defendant. | 2:17-cv-02740-GMN-CLB<br><br>**REPORT AND RECOMMENDATION<br>OF U.S. MAGISTRATE JUDGE**[2] |

This case involves the judicial review of an administrative action by the Commissioner of Social Security ("Commissioner") denying Jacqueline Marzan's ("Marzan") application for disability insurance benefits pursuant to Title II of the Social Security Act. Currently pending before the Court is Marzan's motion for reversal or remand. (ECF No. 12.) In this motion, Marzan seeks the reversal of the administrative decision and remand for an award of benefits. (*Id.*) The Commissioner filed a response and cross-motion to affirm (ECF No. 15), and Marzan filed a reply (ECF No. 16). For the reasons set forth herein, the Court recommends that Marzan's motion for remand, (ECF No. 12), be granted, and the Commissioner's cross-motion to affirm, (ECF No. 15), be denied.

## I.　STANDARDS OF REVIEW

### A.　Judicial Standard of Review

This Court's review of administrative decisions in social security disability benefits cases is governed by 42 U.S.C. § 405(g). *See Akopyan v. Barnhart*, 296 F.3d 852, 854

---

[1]　Andrew Saul is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).
[2]　This Report and Recommendation is made to the Honorable Gloria M. Navarro, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

(9th Cir. 2002). Section 405(g) provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action ... brought in the district court of the United States for the judicial district in which the plaintiff resides." The Court may enter, "upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.*

The Court must affirm an Administrative Law Judge's ("ALJ") determination if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *see also* 42 U.S.C. § 405(g) ("findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (internal quotation marks and citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)); *see also Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005).

To determine whether substantial evidence exists, the Court must look at the administrative record as a whole, weighing both the evidence that supports and undermines the ALJ's decision. *Orteza v. Shalala*, 50 F.3d 748, 749 (9th Cir. 1995) (citation omitted). Under the substantial evidence test, a court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "However, if evidence is susceptible of more than one rational interpretation, the decision of the ALJ must be upheld." *Shalala,* 50 F.3d at 749 (citation omitted). The ALJ alone is responsible for determining credibility and for resolving ambiguities. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).

It is incumbent on the ALJ to make specific findings so that the court does not speculate as to the basis of the findings when determining if substantial evidence supports the Commissioner's decision. The ALJ's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision. *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990).

### B.  Standards Applicable to Disability Evaluation Process

The individual seeking disability benefits bears the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected ... to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). More specifically, the individual must provide "specific medical evidence" in support of her claim for disability. *See* 20 C.F.R. § 404.1514. If the individual establishes an inability to perform her prior work, then the burden shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998).

The first step requires the ALJ to determine whether the individual is currently engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(b), 416.920(b). SGA is defined as work activity that is both substantial and gainful; it involves doing significant physical or mental activities, usually for pay or profit. 20 C.F.R. §§ 404.1572(a)-(b), 416.972(a)-(b). If the individual is currently engaging in SGA, then a finding of not disabled is made. If the individual is not engaging in SGA, then the analysis proceeds to the second step.

//
//
//

The second step addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits her from performing basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is not severe when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Rulings ("SSRs") 85-28 and 96-3p.1 If the individual does not have a severe medically determinable impairment or combination of impairments, then a finding of not disabled is made. If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to the third step.

The third step requires the ALJ to determine whether the individual's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. If the individual's impairment or combination of impairments meets or equals the criteria of a listing and meets the duration requirement (20 C.F.R. §§ 404.1509, 416.909), then a finding of disabled is made. 20 C.F.R. §§ 404.1520(h), 416.920(h). If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to the next step.

Prior to considering step four, the ALJ must first determine the individual's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). The RFC is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. SSR 96-8p. In making this finding, the ALJ must consider all of the symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529 and 416.929; SSRs 96-4p, 96-7p. To the extent that objective medical evidence does not substantiate statements about the intensity, persistence, or functionally-limiting effects of pain or other symptoms, the ALJ

must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. The ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. §§ 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.

After making the RFC determination, the ALJ must then turn to step four in order to determine whether the individual has the RFC to perform her past relevant work ("PRW"). 20 C.F.R. §§ 404.1520(f), 416.920(f). PRW means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the individual to learn the job and performed at SGA. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. If the individual has the RFC to perform her past work, then a finding of not disabled is made. If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to the fifth and last step.

The fifth and final step requires the ALJ to determine whether the individual is able to do any other work considering her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g). If she is able to do other work, then a finding of not disabled is made. Although the individual generally continues to bear the burden of proving disability at this step, a limited evidentiary burden shifts to the Commissioner. The Commissioner is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the individual can do. *Lockwood v. Comm'r, Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).

**II.    CASE BACKGROUND**

    A.    <u>Procedural History</u>

Marzan applied for disability insurance benefits ("DIB") on May 19, 2013 with an alleged disability onset date of May 16, 2010. (Administrative Record ("AR") 18, 166-67.) The application was denied initially (AR 103-106), and on reconsideration. (AR 107-109.) Marzan subsequently requested an administrative hearing. (AR 13.)

On November 17, 2015, Marzan appeared at a hearing before an Administrative Law Judge ("ALJ"). (AR 34-67.) A vocational expert ("VE"), also appeared at the hearing. (*Id.*) The ALJ issued a written decision on June 3, 2016, finding that Marzan was not disabled because she could perform work existing in significant numbers in the national economy. (AR 15-27.) Marzan appealed, and the Appeals Council denied review on August 28, 2017. (AR 1-6.) Accordingly, the ALJ's decision became the final decision of the Commissioner. Having exhausted all administrative remedies, Marzan filed a complaint for judicial review on August 22, 2017. (ECF No. 1-1.)

B.   ALJ's Decision

In the written decision, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520 and 416.920. (AR 15-27.) Ultimately, the ALJ disagreed that Marzan had been disabled from May 19, 2013, the date the application was filed. (*Id.* at 27.) The ALJ held that, based on Marzan's RFC, age, education, and work experience, there were jobs in the national economy that she could perform. (*Id.* at 25.)

In making this determination, the ALJ started at step one. Here, the ALJ found Marzan had not engaged in substantial gainful during the period from her alleged onset date of May 16, 2010 through her date last insured of December 31, 2013. (*Id.* at 20.) At step two, the ALJ found Marzan had the following severe impairments: degenerative disc disease, and possible multiple sclerosis ("MS"). (*Id.* at 20-22.) At step three, the ALJ found Marzan did not have an impairment or combination of impairments that either met or medically equaled the severity of those impairments listed in 20 C.F.R. Part 404, Subpart P, Appx. 1; 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. (*Id.* at 22.)

Next, the ALJ determined Marzan had an RFC to perform light work, as defined by 20 C.F.R. § 404.1567(b) specifically as follows: she could lift and/or carry up to 20 pounds occasionally and 10 pounds frequently; could stand and/or walk for a total of six hours, and sit for six hours in an eight-hour workday with normal breaks; and occasionally climb ramps or stairs, but she could not use ladders, ropes, or scaffolds. (*Id.* at 22-24.) According to the ALJ's RFC determination, Marzan was capable of occasional stooping,

6

kneeling, crouching, or crawling. (*Id.*)  She was precluded from concentrated exposure to temperature extremes, vibration, fumes, odors, dusts or gases. (*Id.*) Additionally, she was limited to the performance of simple and detailed tasks and could only have occasional contact with the general public. (*Id.*)

The ALJ found Marzan's medically determinable impairments could reasonably be expected to cause the symptoms alleged, but that her statements regarding the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. (*Id.* at 23.)  In reaching this conclusion, the ALJ reviewed and discussed the objective medical evidence, medical opinions, and third-party function reports provided by Marzan's husband and daughter. (*Id.* at 23-24.) Specifically, the ALJ stated that the records for the period between the Marzan's alleged onset date (May 16, 2010) and her date last insured (December 31, 2013) did not reflect a disabling degree of functional restriction. (*Id.*)  The ALJ supported her opinion by noting that Marzan's alleged onset date coincides with the Marzan's treatment for a transient ischemic attack ("TIA"), which was immediately followed by the reported right-side weakness. (AR 357-75).  Medical testing conducted subsequent to the TIA episode, between June and September 2010, which included electrodiagnostic testing, stress testing, and physical examination, all yielded normal findings. (AR 427-30).  The ALJ then determined that Marzan was unable to perform any past relevant work. (*Id.* at 25.)

Proceeding to step five, and relying on the testimony of the VE, the ALJ determined that Marzan's age, education, work experience, and RFC would allow her to perform occupations existing in significant numbers in the national economy, such as: mail sorter, routing clerk, or laminating inspector. (*Id.* at 26.)  Accordingly, the ALJ held that Marzan had not been under a disability at any time from May 16, 2010, the alleged onset date, through December 31, 2013, the date last insured, and denied her SSI claim. (*Id.*)

//
//
//

### III. ISSUES

Marzan seeks judicial review of the Commissioner's final decision denying her DIB under Title II of the Social Security Act. (ECF No. 12.) Marzan raises the following issues for this Court's review:

1. Whether the ALJ improperly addressed the medical opinions of Marzan's examining doctors;
2. Whether the ALJ improperly considered Marzan's testimony;
3. Whether the ALJ improperly rejected the lay witness testimony; and
4. Whether the ALJ's step five finding is not supported by substantial evidence.

### IV. DISCUSSION

#### A. Opinions of Dr. Qamar and Dr. Ross

Marzan argues the ALJ improperly addressed the opinions of Marzan's examining doctors, Dr. Samir Qamar and Dr. Staci Ross. (ECF No. 12 at 11-14.) Specifically, Marzan asserts that the ALJ's failure to accurately present all the limitations described by Dr. Qamar to the VE or to provide clear and convincing reasons for discounting those limitations is reversable error because the ALJ failed to include consideration of Marzan's good and bad days, the likelihood of symptom flares, and the effects of Marzan's fatigue. (*Id.* at 12-13). Likewise, Marzan alleges that the ALJ's failure to address Marzan's limitations or to present Dr. Ross's recommendations to the VE is also reversable error because they should have been presented to determine how they would affect Marzan's ability to perform the identified jobs. (*Id.* at 13).

Within the administrative record, an ALJ may encounter medical opinions from the three types of physicians: treating, examining, and non-examining. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. *Holohan v. Massanari*, 246 F.3d 1195, 1201-1202 (9th Cir. 2001); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally speaking, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's

opinion carries more weight than a non-examining physician's opinion. *Holohan*, 246 F.3d at 1202. Moreover, a treating physician's opinion that is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in [a claimant's] case record," is entitled to controlling weight. 20 C.F.R. §§ 401.1527(c)(2), 416.927(c)(2); *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014). The ALJ is not, however, bound by the conclusions of any particular physician.

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the Court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 830-31. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. *Id.* at 830. The ALJ can "meet this burden by setting out a detailed and thorough summary of the facts and the conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1991) (citation omitted). "The ALJ need not accept the opinion of any physician . . . if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).

        1.     <u>Dr. Ross's Opinion</u>

The ALJ found that Marzan's medically determinable mental impairment of mood disorder, not otherwise specified, did not cause more than minimal limitation in the Marzan's ability to perform basic mental work activities and was "nonsevere." (AR 20.). In forming this finding, the ALJ gave substantial weight to Dr. Ross's opinion following her neuropsychological evaluation on April 27, 2011. (*Id.*) The ALJ cited Dr. Ross's report, which specifically documented Marzan's appropriate functional ability regarding behavior,

cognition, and psychological functioning. (*Id.*)  The ALJ cited Dr. Ross's opinion stating that based on her interview, examination, testing, and review of Marzan's medical records that Marzan evinced mild cognitive impairment associated with her physical condition. (*Id.*)

Marzan alleges that the ALJ improperly rejected critical portions of Dr. Ross's opinions in the absence of clear and convincing reasons for doing so. (ECF No. 12 at 14). Specifically, Marzan raises a challenge to the hypothetical the ALJ posed to the vocational expert. (*Id.*)  Marzan contends that the hypothetical was inadequate because the ALJ did not accurately capture all of the limitations described by Dr. Ross in developing the RFC, namely Marzan's primary limiting issues of fatigue and fluctuating, unpredictable symptoms, as well as the recommendations for extra time to complete tasks, extra breaks to manage fatigue and fluctuating attention, and a quiet environment free of distractions and interruptions.  (*Id.* at 13.; AR 536)

However, the Commissioner correctly states that Dr. Ross's treatment advice to Marzan for her mild cognitive impairment was not a functional assessment; rather, the notations appear in the section of Dr. Ross's report titled, "Recommendations".  (ECF No. 15 at 15-16.)  The recommendations made by Dr. Ross primarily included advice as to how Marzan could cope with her mild cognitive impairment and reported psychological symptoms for difficulties that she would have in performing her "current vocation" as a legal secretary. (*Id.* at 16; ACR 536.) *See Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 691 (stating that the recommendations included in a doctor's report are not a functional assessment.)  The ALJ found that Marzan's past relevant work as a legal secretary was mostly skilled or semi-skilled work and that her RFC prevented her from performing such past work. (AR 25).

//

Moreover, Dr. Ross's report was reviewed at step two, as part of the ALJ's determination as to whether Marzan had a medically determinable impairment that is severe or a combination of impairments that are severe. (AR 20-21.) Specifically, the ALJ examined Marzan's medically determinable mental impairment of mood disorder by considering the four broad functional areas set out in 20 C.F.R., Part 404, Subpart P, Appendix 1, otherwise known as the "paragraph B" criteria. (*Id.* at 20.) In considering the paragraph B criteria, the ALJ noted that Marzan underwent neuropsychological evaluation by Dr. Ross on April 27, 2011; based on her interview, examination, testing and review of Marzan's medical records, Dr. Ross opined that Marzan evinced only mild cognitive impairment associated with her physical condition. (*Id.* at 21.)

In determining that Marzan's medically determinable mental impairments caused no more than mild limitation in any of the first three functional areas (daily living activities, social functioning, and concentration, perseverance or pace) and no episodes of decompensation of extended duration, the ALJ gave Dr. Ross's opinion substantial weight because it was supported by Marzan's mental status examinations, treatment history, and reported or demonstrated mental abilities. (*Id.*) However, the ALJ's opinion did not specify that Dr. Ross's opinion was in fact considered in forming the RFC; in fact, the ALJ's opinion specifically stated that "[t]he limitations identified in the 'paragraph B' criteria are not a residual functioning capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process." (*Id.* at 20-21.) In the step two analysis section where the ALJ discusses the weights given to each medical opinion, the ALJ specifically noted that the opinion of another doctor, Dr. Browning, was considered in forming the RFC assessment; no such statement was made concerning the opinion of Dr. Ross. (*Id.* at 21.) Therefore, the Court finds that the ALJ's opinion is not

11

sufficiently clear as to whether the effect of Dr. Ross's opinions was in fact considered in developing the RFC, and if they were, why those limitations were not reflected in the hypotheticals posed to the VE by the ALJ.  Accordingly, the Court recommends that this case be remanded for further development of the record as it pertains to Dr. Ross's opinions relating to the ALJ's RFC determination.

### 2.      Dr. Qamar's Opinion

The ALJ assigned "some weight" to the opinion of Dr. Qamar, an examining physician, and did not assign any weight to the opinion of Dr. Ross, also an examining physician, while assigning "significant weight" to the opinions of State agency reviewing physicians Dr. Dhaliwal and Dr. Lee at the initial and reconsideration levels. (AR 24.) Although the Commissioner argues the ALJ gave valid reasons for giving the State agency doctors' opinion significant weight, (ECF No. 15 at 12), the Court finds the ALJ failed to provide a "specific and legitimate reason" supported by "substantial evidence" for assigning some weight to Dr. Qamar's opinion. *See Lester*, 81 F.3d at 830.

Dr. Qamar's opinion consisted of a six-page summary report of a comprehensive internal medicine evaluation. (AR 660-66.)  The ALJ noted that Marzan was examined by Dr. Qamar on October 15, 2013, and that the claimant's chief complaints at the time "included intermittent pain in her lower extremities with associated loss of balance" and that upon physical examination, Marzan demonstrated normal ambulation and maneuvering ability, full strength and motion in all areas, and no neurologic deficiencies. (AR 23-24.)  The ALJ also stated that based on his examination and review of the Marzan's historical medical records, Dr. Qamar concluded that Marzan would be capable of performing a range of work activity involving lifting and carrying no more than 20 pounds and standing or walking no more than four hours in an eight-hour workday, subject to additional postural restrictions. (*Id.* at 24.)  The ALJ discounted Dr. Qamar's opinion because while Dr. Qamar's assessment that Marzan would be capable of light work was supported by his own clinical observations, the restriction to standing or walking for no

more than four hours was not consistent with Marzan's functional ability documented throughout the period at issue. (*Id.*)

Marzan alleges that the ALJ's finding failed to account for the "good and bad days" and potential symptom flares described by Dr. Qamar, an examining physician. (ECF No. 16 at 2.) An ALJ must also consider the opinions of state agency medical or psychological consultants because they "are highly qualified and experts in Social Security disability evaluation." 20 C.F.R. § 416.913a(b)(1).  Their findings and the findings of other "nontreating, nonexamining physician can amount to substantial evidence, so long as other evidence in the record supports those findings." *Saelee v. Chater,* 94 F.3d 520, 522 (9th Cir. 1996) (citation omitted).  But their opinions "should be discounted and [are] not substantial evidence when contradicted by all other evidence in the record." *Gallant v. Heckler,* 753 F.2d 1450, 1454 (9th Cir. 1984) (quoting *Millner v. Schweiker,* 725 F.2d 243, 245 (4th Cir. 1984) ) (internal quotation marks omitted).

The ALJ's RFC determination afforded Dr. Qamar's opinion, the opinion of an examining physician, only "some weight" as to his assessment that Marzan would be capable of light work based on his clinical observations. (AR 24).  Dr. Qamar's report indicated that minimal records were available for his review, but one of the notes did confirm a multiple sclerosis diagnosis. (AR 663.)  In fact, notes received from Marzan's treating neurologist at the time, Dr. Leo Germin, dating back to May 19, 2011, specifically stated a diagnosis of relapsing-remitting multiple sclerosis. (AR 757, 750, 747, 742, 734, 762, 766.)  Dr. Qamar's report does not indicate which of Dr. Germin's reports was made available for his review. (AR 663.)  Dr. Qamar's report included a notation, stating that "[m]ultiple sclerosis can result in sudden unexpected attacks and even though the claimant's ability to perform the functions are adequate at this time, this could change very quickly." (AR 665.)

The ALJ's RFC determination found that Dr. Qamar's opinion restricting Marzan to standing or walking for no more than four hours a day was inconsistent with Marzan's documented functional ability throughout the period at issue. (AR 24.)  The ALJ gave significant weight to the opinions of State agency reviewing physicians, Dr. Dhaliwal and Dr. Lee at the initial and reconsideration level, stating only that their opinions "are supported by substantial evidence as of the dates of those determinations and are not inconsistent with any evidence received at the hearing level." (*Id.*)  No specific evidence from either reviewing physician is cited in the ALJ's opinion, other than a reference to the exhibits in the record. (*Id.*)  Therefore, the Court finds that the ALJ's RFC determination is ambiguous in its explanation of why the opinions of the non-examining physicians are afforded more weight than the opinion of Dr. Qamar, an examining physician.  Accordingly, the Court recommends that this case be remanded for the ALJ to clearly state specific, legitimate reasons based on substantial evidence in the record for rejecting Dr. Qamar's opinion.

### 3. Hypothetical to the Vocational Expert

Marzan argues the ALJ failed to ask the VE hypothetical questions that included all her limitations.  (ECF No. 12 at 12-14.)  During the hearing, the ALJ asked the VE the following hypothetical:

> If you could assume a hypothetical individual of Claimant's age, education and background with the past jobs you described, further assume this individual would be limited to lifting 20 pounds occasionally, 10 frequently, could stand for six or sit for six, can never climb ladders, ropes or scaffolds… could occasionally climb ramps and stairs, but never climb ladders, ropes or scaffolds, could occasionally stoop, kneel, crouch or crawl, would have to avoid concentrated exposure to cold and heat, vibration and to fumes, odors, dust and gases.  This individual could do simple and detailed tasks an have occasional contact with public.  Could that hypothetical individual perform any of the past jobs you described?
>
> If you assume a hypothetical individual Claimant's age, education, background, further assume this person would have the same limitations as in hypo 1, but the person would have to be off task for 15% of the day.  Could that hypothetical individual perform any of the past jobs you've described?

(AR 63-65)(emphasis added).

The ALJ's RFC finding stated that Dr. Qamar's restriction to standing/walking for no more than four hours was not supported by Dr. Qamar's examination and was inconsistent with Marzan's documented functional ability throughout the period at issue. (AR 24). Marzan argues that the ALJ does not cite, and the record does not include, any documentation of Marzan having an ability to consistently stand or walk for six hours in a day. (ECF No. 12 at 12.) The Commissioner alleges that even if the ALJ accepted Dr. Qamar's stand and walk limitation, it would not qualify as a disabling limitation because Marzan cited no authority to support her position that a stand and walk limit of four hours in an eight-hour day is sedentary and not light, and even if Marzan was limited to sedentary work, she would not be disabled under the rules because, at her date last insured she was 44 years old, a younger individual with more than a high school education and skilled past work. (*Id.* at 12, fn. 6.) While the evidence in the record may support the Commissioner's assertion, the ALJ's opinion was ambiguous in articulating the specific reasons why Dr. Qamar's four-hour standing/walking limitation was not included in the hypotheticals posed to the VE. (*See* AR 24, 63-65.) Accordingly, the Court finds that the ALJ failed to address the conflict between the examining physician and consulting physicians' opinions regarding Marzan's ability to stand/walk because no hypothetical was posed to the VE on the potential four-hour standing/walking limitation.

In sum, the hypothetical questions posed by the ALJ and Marzan's counsel failed to account for all of Marzan's limitations. In such circumstances, the law is clear that the vocational expert's testimony cannot constitute substantial evidence to support the ALJ's finding of no disability. *Gallant*, 753 F.2d at 1456.

B.     Harmless Error

Courts in the Ninth Circuit "will not reverse the decision of the ALJ for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Consistent with the court's duty to review the ALJ's decision for substantial evidence rather than affirm upon its own independent findings, the court must

15

exercise caution when relying on the harmless error doctrine. *See Stout*, 454 F.3d at 1054. Only where a reviewing court can "confidently conclude" that no reasonable ALJ would have reached a different determination is the ALJ's error is harmless. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006).

The reversible errors in the ALJ's RFC determination are not harmless. As Marzan argues, it is the ALJ's job to take the objective medical evidence in the record and the limitations described by each doctor and translate those limitations into an RFC finding by providing clear and convincing reasons for refusing to accept the opinions of examining physicians in favor of non-examining physicians. (*See* ECF No. 16 at 4.) For the reasons stated above, the Court cannot conclude that no reasonable ALJ would have reached a different determination because of the ambiguities in the ALJ's opinion. Therefore, the Court finds the reversible errors are not harmless.

### C. Remand for Further Proceedings

"The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court." *Sprague v. Bowen,* 812 F.2d 1226, 1232 (9th Cir. 1987); *Stone v. Heckler,* 761 F.2d 530, 533 (9th Cir. 1985); *see also Dominguez v. Colvin,* 808 F.3d 403, 407 (9th Cir. 2015) (amended Feb. 5, 2016) ("The only issue on appeal is whether the district court abused its discretion in remanding for further proceedings instead of remanding for benefits."); *Terry v. Sullivan,* 903 F.2d 1273, 1280 (9th Cir. 1990) (noting that the court has the "discretion to remand so that the Secretary may further develop the record").

Our case law precludes a district court from remanding a case for an award of benefits unless certain prerequisites are met. *Burrell v. Colvin,* 775 F.3d 1133, 1141 (9th Cir. 2014 (discussing *Garrison v. Colvin,* 759 F.3d 995 (9th Cir. 2014)). The district court must first determine that the ALJ made a legal error, such as failing to provide sufficient reasons for rejecting evidence. *Id.* If the court finds such an error, it must next review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities and "all essential factual issues have been resolved." *Treichler v. Comm'r of*

*Soc. Sec. Admin.,* 775 F.3d 1090, 1001 (9th Cir. 2014). *Dominguez,* 808 F.3d at 407 (concluding that the district court did not err in remanding the case for further factual proceedings, rather than payment of benefits, where there were inconsistencies, conflicts, and gaps in the record that required further administrative proceedings.

As noted above, the ALJ failed to address the entirety of Dr. Qamar and Ross's medical opinions and failed to properly consider all the limitations contained therein when questioning the vocational expert. Specifically, the ALJ's opinion is ambiguous as to whether the effect of Dr. Ross's opinion was in fact considered in developing the RFC, and if so, why those limitations were not reflected in the hypotheticals posed to the VE. Moreover, the ALJ's RFC determination does not clearly state specific, legitimate reasons based on substantial evidence in the record for rejecting Dr. Qamar's opinion. Because there are outstanding issues that must be resolved before a final disability determination can be made, it is appropriate to remand this case for further proceedings. *Treichler,* 775 F.3d at 1105.

### D. <u>Other Arguments Raised by Marzan</u>

Because the Court recommends remand of this case for further development of the administrative record as to both Dr. Qamar and Dr. Ross's opinions, the Court will not address Marzan's other arguments relating to Marzan's testimony, lay witness testimony, or the step five finding. However, these issues should be more fully addressed in the ALJ's opinion on remand.

**V.  CONCLUSION**

Based on the foregoing, the Court recommends that Marzan's motion to remand (ECF No. 12) be granted, and the Commissioner's cross-motion to affirm (ECF No. 15) be denied.

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Local Rule IB 3-2, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and

Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.  This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## VI.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Marzan's motion for remand (ECF No. 12) be **GRANTED**, and the Commissioner's cross-motion to affirm (ECF No. 15) be **DENIED**.

**DATED**: January 16, 2020.

_____
**UNITED STATES MAGISTRATE JUDGE**